UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11672-RGS

DAVID M. GOVERNO and GOVERNO LAW FIRM LLC

v.

ALLIED WORLD INSURANCE COMPANY

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

August 27, 2019

STEARNS, D.J.

David M. Governo and Governo Law Firm LLC (GLF) brought this lawsuit in Middlesex Superior Court against their insurer, Allied World Insurance Company, alleging that Allied World had failed to provide a defense in an action brought against them in state court. The Complaint sets out two claims: the first for a declaratory judgment that Allied World was obligated to defend them (Count I); the second for breach of the insurance contract (Count II). Allied World timely removed the case to the federal district court on diversity grounds.[1] Plaintiffs now move for partial summary

---

[1] Plaintiffs filed the Complaint on July 25, 2017. Allied World accepted service on August 8, 2017, and removed the case to this court on September 6, 2017. Allied World is a New Hampshire company with a principal place of business in New York, while Governo is a citizen of Massachusetts, and GLF

judgment, while Allied World moves for summary judgment. For the reasons to be explained, the parties' motions will be variously allowed in part and denied in part.

## BACKGROUND

The material facts are as follows. Governo was the founder and managing partner of the Boston law firm GLF. In the summer of 2016, six GLF attorneys attempted to purchase GLF and its assets.[2] After the attempt failed, the dissident attorneys started a competing law firm, CMBG3 Law LLC. On December 27, 2016, GLF brought suit in Suffolk Superior Court against the renegade attorneys and their new law firm for conversion, misappropriation of trade secrets, breach of the duty of loyalty, tortious interference with contractual and advantageous relations, civil conspiracy, and unfair and deceptive trade practices. According to the state court complaint, the departing attorneys unlawfully took from GLF, among other things, certain proprietary databases and client file materials. Dkt # 53-2.

On February 10, 2017, CMBG3 and the departing attorneys asserted three counterclaims against Governo and GLF. They sought declaratory

---

is an LLC with a principal place of business in Massachusetts. Notice of Removal ¶¶ 1-3. GLF's sole member is Governo. Dkt # 61.

[2] The attorneys are Jeniffer Carson, Kendra Bergeron, Brendan Gaughan, David Goldman, Bryna Misiura, and John Gardella.

judgment that they were entitled to the client materials they had taken from GLF, as well as damages for the intentional interference with contractual and/or advantageous business relations, and for a violation of the Employee Retirement Income Security Act of 1974 (ERISA). Dkt # 53-3.

Governo submitted a notice to Allied World of the counterclaims and requested a defense under an LPL Assure Lawyers Professional Liability Insurance Policy. The Policy, as described in greater detail below, insured Governo and GLF against certain claims made between March 15, 2016 and March 15, 2017. Dkt # 53-5.

On February 24, 2017, Allied World denied coverage. After Allied World rejected a request for reconsideration, Governo and GLF brought this lawsuit. On September 28, 2018, the court denied a motion by Allied World to dismiss. The sole issue now before the court is whether Allied World breached a duty to defend.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008).

"An issue is 'genuine' when a rational factfinder could resolve it [in] either direction." *Boudreau v. Lussier*, 901 F.3d 65, 71 (1st Cir. 2018) (citation omitted).

The court construes the words of an insurance policy "in their usual and ordinary sense," *Specialty Nat'l Ins. Co. v. OneBeacon Ins. Co.*, 486 F.3d 727, 732 (1st Cir. 2007), "consider[ing] what an objectively reasonable insured, reading the relevant policy language, would expect to be covered," *Hazen Paper Co. v. United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990). While "ambiguous words or provisions are to be resolved against the insurer," *City Fuel Corp. v. Nat'l Fire Ins. Co. of Hartford*, 446 Mass. 638, 640 (2006), "provisions [that] are plainly and definitely expressed in appropriate language must be enforced in accordance with [the policy's] terms," *High Voltage Eng'g Corp. v. Fed. Ins. Co.*, 981 F.2d 596, 600 (1st Cir. 1992), quoting *Stankus v. New York Life Ins. Co.*, 312 Mass. 366, 369 (1942).

"An insurer has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." *Billings v. Commerce Ins. Co.*, 458 Mass. 194, 200 (2010). "[T]he obligation of the insurer to defend is based not only on the facts alleged in the complaint but also on the facts that are known or readily knowable by the insurer." *Desrosiers v. Royal*

*Ins. Co. of America*, 393 Mass. 37, 40 (1984). "Once the insured makes an initial showing that the overall coverage provisions of the insurance policy apply, the burden 'shifts to the insurer to demonstrate that some exclusion defeats coverage.'" *Clark School for Creative Learning, Inc. v. Philadelphia Indem. Ins. Co.,* 734 F.3d 51, 55 n.1 (1st Cir. 2013), quoting *Vermont Mut. Ins. Co. v. Zamsky*, 732 F.3d 37, 41 (1st Cir. 2013).

> Here, the Policy provides, in pertinent part, that
>
> [t]he Insurer will pay on behalf of an Insured . . . all amounts in excess of the Retention shown in the Declarations, that an Insured becomes legally obligated to pay as Damages and Claim Expenses because of a Claim arising out . . . [of a Legal Services Wrongful Act] by an Insured first made during the Policy Period or any Extended Reporting Period[.]

Dkt # 53-5 § I (emphasis omitted). The Insurer is Allied World, while GLF is the Named Insured, and Governo is a covered Insured. *Id.* §§ III.N., O. A Claim, as relevant here, is "any written notice or demand for monetary relief or Legal Services; [or] . . . any civil proceeding in a court of law . . . made to or against any Insured seeking to hold such Insured responsible for any Wrongful Act." *Id.* § III.C. (emphasis omitted). A Wrongful Act includes a Legal Services Wrongful Act, which, in relevant part, refers to "any actual or alleged act, error or omission committed by any Insured, solely in the performance of or failure to perform Legal Services." *Id.* §§ III.Q., HH. (emphasis omitted). Legal Services, in turn, is defined as "those services

5

performed on behalf of the Named Insured for others by an Insured . . . but only where such services were performed in the ordinary course of the Insured's activities as a lawyer." *Id.* § III.P. (emphasis omitted).

Allied World contends that plaintiffs' claim is not covered under the Policy because the counterclaims asserted are either excluded from coverage or do not concern legal malpractice, and instead amount to a business dispute between plaintiffs and their former employees. Given "the general rule in Massachusetts . . . that 'an insurer must defend the entire lawsuit if it has a duty to defend any of the underlying counts in the complaint,'" *GMAC Mortg., LLC v. First Am. Title Ins. Co.*, 464 Mass. 733, 738 (2013), quoting *Liberty Mut. Ins. Co. v. Metropolitan Life Ins. Co.*, 260 F.3d 54, 63 (1st Cir. 2001),[3] the court will analyze each counterclaim in turn.

As an initial matter, the court agrees with Allied World that the first and third counterclaims are not covered under the Policy. The first counterclaim, which seeks a declaratory judgment, is specifically excluded from the Policy's definition of a claim. *See* Dkt # 53-5 § III.C. ("A Claim does not include . . . any proceeding that seeks injunctive, *declaratory*, equitable or non-pecuniary relief or remedies of any type.") (emphasis altered). The

---

[3] "This is known as the 'in for one, in for all' or the 'complete defense' rule." *GMAC Mortg., LLC*, 464 Mass. at 738.

third counterclaim – asserting an ERISA violation over plaintiffs' purported failure to provide benefits owed under a defined benefit plan – does not constitute a legal services wrongful act because a benefit determination is not a service that a lawyer performs in the ordinary course of professional practice. *See Utica Mut. Ins. Co. v. Herbert H. Landy Ins. Agency, Inc.*, 820 F.3d 36, 42 (1st Cir. 2016) ("[P]rofessional liability policies generally do not cover . . . business management activities, business decisions of a nonprofessional nature, activities not requiring professional expertise, or activities totally unrelated to the profession.").

The court, however, agrees with plaintiffs that the second counterclaim is "reasonably susceptible" of being interpreted to fall within the coverage of the Policy, as giving notice to clients of an attorney's departure from a firm and transferring a client's file to the attorney's new law firm (if the client wishes) are within the orbit of professional tasks that lawyers "perform[] in the ordinary course." Dkt # 53-5 § III.P. According to the second counterclaim,

> GLF and Governo intentionally frustrated and interfered with clients which chose to transfer legal matters to the Departing Attorneys and CMBG3 Law by failing or refusing to cooperate reasonably with the Departing Attorneys and CMBG3 Law on client notification; providing unfair notice to clients of the departure and change in affiliation of the Departing Attorneys and the opening of CMBG3 Law; delaying or stymying the transfer and release of client files in response to a client transfer

7

> request; failing or refusing to transfer and release full and complete client file materials to include electronically stored information; and in other ways that will be proven at trial.

Dkt # 53-3 ¶ 81. It further alleges that

> GLF and Governo interfered with the relationships between clients and the Departing Attorneys at CMBG3 Law with the improper motive of attempting to disrupt their new firm out of spite and ill-will; or, by improper means of withholding client property or client file materials necessary and required to represent clients on legal matters in violation of client choice and the Massachusetts Rules of Professional Conduct governing the practice of law, failing to cooperate in the proper notice to clients of the change in affiliation of the Departing Attorneys at CMBG3 Law, and in other ways that will be proven at trial.

*Id.* ¶ 82.

Allied World, for its part, argues that facilitating the transition of client representation from one firm to another is not a "legal service," particularly when considered against plaintiffs' alleged mishandling of the task as part of their thinly disguised sabotage campaign. Allied World also maintains that plaintiffs' actions were not "committed . . . *solely* in the performance of or failure to perform Legal Services" because of the mercenary component. Dkt # 53-5 § III.Q. (emphasis altered). Fundamental to Allied World's position is a confusion of a "legal service" with the bad motive or deliberate incompetence with which it is performed.[4]

---

[4] Allied World further argues that plaintiffs did not perform legal services "for others," especially since neither CMBG3 nor the departing

8

In the real-world practice of law, it is not uncommon for lawyers to switch practices or clients to switch firms or find new lawyers, sometimes even within the same firm. So common is the phenomenon, that a body of professional and ethical rules have been developed to regulate the transitions involved. For example, Rule 1.15A of the Massachusetts Rules of Professional Conduct defines "client files" and the lawyer's duty to properly maintain them, while Rule 1.16(d) governs a lawyer's duties upon the termination of representation, including "giving reasonable notice to the client" and "surrendering papers and property to which the client is entitled." Mass. R. Prof. C. 1.15A and 1.16(d). Similarly, the Supreme Judicial Court, citing guidance from the American Bar Association, has recognized that when alerting a client to a change in the firm's composition, "[t]he ethical standard provides that any notice explain to a client that he or she has the right to decide who will continue the representation." *Meehan v. Shaughnessy*, 404 Mass. 419, 437 (1989).

---

lawyers were ever GLF's clients. The Policy does not, however, restrict "others" to a party to the lawsuit. Rather, the Policy insures against harms "arising out of" services performed, a phrase that is interpreted broadly under Massachusetts law. *See Med. Records Assocs., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 142 F.3d 512, 516 n.4 (1st Cir. 1998) (interpreting "arising out of" broadly "to require only a connection between the challenged conduct and the insured's provision of professional services"), citing *New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co.*, 40 Mass. App. Ct. 722, 726 (1996).

The second counterclaim alleges, among other things, that plaintiffs provided "unfair notice to clients," failed "to transfer and release full and complete client file materials," and violated "client choice and the Massachusetts Rules of Professional Conduct." Dkt # 53-3 ¶¶ 81-82. While Allied World may be correct that there is a business component to this alleged unprofessional handling of the matter, it is not unreasonable to interpret the alleged conduct as "solely" legal services that plaintiffs undertook, or failed to undertake, on behalf of their *existing* clients, no matter how mercenary plaintiffs' subjective motives were. *See Utica Mut. Ins. Co.*, 820 F.3d at 44 ("[P]rofessional and business activities are not . . . mutually exclusive, . . . [as] some professional decisions also affect business practices."). Thus, the second counterclaim is "reasonably susceptible" to a claim under the Policy.[5]

Plaintiffs next argue that Allied World is responsible for all of their costs, except those relating to proof of damages, because GLF's affirmative claims parallel and are "inextricably linked" to the allegations in the

---

[5] This conclusion is consistent with the court's denial of Allied World's motion to dismiss, which found that "it is reasonably possible that the allegations in the [second] counterclaim state a claim within the Policy's coverage for 'Legal Services Wrongful Acts' because the duties to properly notify clients regarding an attorney's departure and transfer client files implicate the specialized knowledge and skill of lawyers." *Governo v. Allied World Ins. Co.*, 335 F. Supp. 3d 125, 132 (D. Mass. 2018).

counterclaims, namely who owns the client files and databases. *See TIG Ins. Co. v. Nobel Learning Communities, Inc.*, 2002 WL 1340332, at *15 (E.D. Pa. June 18, 2002) (finding that an insurer had a duty to defend and to pay the costs of the insured's affirmative claims because they were "critical to and 'inextricably intertwined' with the defense of the [counterclaim]"). In other words, according to plaintiffs, the costs associated with prosecuting GLF's claims are nearly identical to those associated with defending against the departing attorneys' counterclaims.[6]

Allied World responds, and the court agrees, that it is only obligated to pay for the cost to defend the counterclaims against GLF and Governo, not to prosecute GLF's affirmative claims. In *Mount Vernon Fire Ins. Co. v. Visionaid, Inc.*, 477 Mass. 343, 354 (2017), the Supreme Judicial Court held that "[a]n insurer with a contractual duty to defend an insured is not required to prosecute an affirmative counterclaim on the insured's behalf," nor is it required "to pay the costs of prosecuting a counterclaim on behalf of the insured." The Court reasoned that, in ordinary parlance, the word "defend" means to "deny or oppose the right of a plaintiff in . . . a suit or wrong charged." *Id.* at 348, quoting Webster's Third New International Dictionary

---

[6] Plaintiffs also assert that Allied World is required to cover Governo's defense costs because he, unlike GLF, is not a plaintiff in the underlying state court action.

11

591 (1993). The Court noted that expanding the duty to defend to cover the prosecution of inextricably intertwined claims "would result in extensive preliminary litigation to determine what claims are sufficiently intertwined." *Id.* at 351. Expanding the duty to defend in such a manner would also create "misaligned incentives" because "an insured would have every incentive – and little disincentive – to file suit, knowing that it could reap the benefits of success – however unlikely – while transferring the costs of an otherwise predictably unsuccessful suit onto its insurer." *Barletta Heavy Div., Inc. v. Travelers Ins. Co.*, 2013 WL 5797612, at *10 (D. Mass. Oct. 25, 2013).

In short, Allied World has a duty to defend claims made *against* plaintiffs, not claims made *by* GLF. *See id.* at *14 ("[T]he duty to defend provision is limited to defensive litigation – responding to affirmative claims made against the insured – and does not encompass litigation pursued by the insured against third-parties."). The court, therefore, limits plaintiffs' recovery to legal fees associated with the defense of the counterclaims.[7]

As a final matter, plaintiffs contend that Allied World should bear the burden of determining whether a given fee is covered under the Policy, as the invoices do not distinguish between the costs associated with the affirmative

---

[7] Plaintiffs are also entitled to recover reasonable attorney's fees and expenses incurred here in establishing Allied World's duty to defend under the Policy. *See Preferred Mut. Ins. Co. v. Gamache*, 426 Mass. 93, 98 (1997).

claims and those associated with the counterclaims. *See New England Envtl. Techs. Corp. v. Am. Safety Risk Retention Grp., Inc.*, 810 F. Supp. 2d 390, 397-398 (D. Mass. 2011) ("An insurer that refuses to defend . . . 'cannot claim prejudice in the form of billing format or litigation practices that do not meet its standards, since it could have assumed the defense and imposed those standards.'") (citation omitted). The court disagrees.

While "the burden of allocation generally falls on the insurer," *Liberty Mut. Ins. Co.*, 260 F.3d at 63, here plaintiffs' counsel is in the unique position of knowing what work was done because they submitted the invoices. As plaintiffs' counsel here *and* in for the underlying state court action, they are better able than Allied World to determine whether the work they did was to defend against the counterclaims or to pursue GLF's affirmative claims. The court, therefore, requests that plaintiffs' counsel, to the best of their abilities, allocate which costs are covered and which are not.[8]

## ORDER

For the foregoing reasons, plaintiffs' motion for partial summary judgment and Allied World's motion for summary judgment are <u>ALLOWED in part and DENIED in part</u> as follows: Allied World owes plaintiffs a duty to

---

[8] Where there is overlap between defense and prosecution costs, plaintiffs' counsel should submit a reasonable apportionment. To the extent a dispute arises, the court will determine what is reasonable.

defend in the underlying state court action, which it breached by failing to do so. Allied World is responsible for fees associated with the defense of the counterclaims and this litigation. Plaintiffs bear the burden of allocating between prosecuting and defensive attorneys' fees and costs. The affidavit of fees to be submitted within 14 days of the completion of the state court action.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE